## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VISLESH MACHERLA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| *vs.* | ) | Case No. |
| | ) | |
| NORTH PENN IMPORTS d/b/a | ) | |
| NORTH PENN MAZDA; JONATHAN | ) | |
| SELL; MAZDA NORTH AMERICA | ) | |
| OPERATIONS; AND WELLS | ) | |
| FARGO DEALER SERVICES, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### NOTICE OF REMOVAL

Defendant Wells Fargo Bank, N.A. d/b/a Wells Fargo Auto f/k/a Wells Fargo Dealer Services[1] ("Wells Fargo"), removes this case from the Court of Common Pleas of Philadelphia County, Pennsylvania.

1.     On June 24, 2020, Plaintiff Vislesh Macherla filed the complaint attached at Tab "A" in the Court of Common Pleas of Philadelphia County, and the complaint was docketed to No. 200601413. The attached complaint is the only filing as yet in the state court.

2.     The complaint is one over which this Court could have exercised federal jurisdiction in the first instance. *See* 28 U.S.C. §§ 1332, 1441 and 1446 in that Mr. Macherla is a citizen of Maryland and none of the defendants is a citizen of Maryland and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

---

[1] The complaint incorrectly identifies Wells Fargo as "Wells Fargo Dealer Services, Inc."

3.     As of the time this notice is filed, Wells Fargo has not been served

and it is informed that no other defendant has been served.

Accordingly, Wells Fargo removes this case to this Court.

June 25, 2020                      By:     */s/ David R. Fine*
                                          David R. Fine
                                          PA66742
                                          K&L GATES LLP
                                          17 North Second Street, 18th Floor
                                          Harrisburg, PA 17101
                                          T: (717) 231-4500
                                          david.fine@klgates.com
                                          *Attorneys for Wells Fargo Bank, N.A.*
                                          *d/b/a Wells Fargo Auto f/k/a Wells*
                                          *Fargo Dealer Services*

## <u>CERTIFICATE OF SERVICE</u>

I certify that I filed the attached document with the Court's CM/ECF system on June 25, 2020, such that all registered users in the case will receive copies. I further certify that I will send copies by U.S. Mail to all non-registered users in the case.


*/s/ David R. Fine*

David R. Fine

# Tab "A"

**BENSLEY LAW OFFICES, LLC**
By:    William C. Bensley
**Identification No. 79953**
**1500 Walnut Street, Suite 900**
**Philadelphia, PA  19106**
Email: wcbensley@bensleylawoffices.com
**(267) 322-4000**

**Attorneys for Plaintiffs**

**ASSESSMENT OF DAMAGES HEARING:**
☐ JURY ☐ NON-JURY

Filed and Attested by the
Office of Judicial Records
24 JUN 2020 12:16 pm

☐ JURY ☐ NON-JURY ☑ ARBITRATION

| | |
|---|---|
| **VISLESH MACHERLA** | : |
| **8030 Needwood Road, Condo 202** | : |
| **Derwood, MD  20855** | : |
| v. | : |
| **NORTH PENN IMPORTS d/b/a** | : |
| **NORTH PENN MAZDA** | : |
| **181 Bethlehem Pike** | : |
| **Colmar, PA  18915** | : |
| and | : |
| **JOHNATHAN SELL** | : |
| **181 Bethlehem Pike** | : |
| **Colmar, PA  18915** | : |
| and | : |
| **MAZDA NORTH AMERICAN** | : |
| **OPERATIONS** | : |
| **Attn: Customer Experience Center** | : |
| **P.O. Box 19734** | : |
| **Irvine, CA  92623-9734** | : |
| and | : |
| **WELLS FARGO DEALER SERVICES** | : |
| **930 Harvest Drive #200** | : |
| <u>**Blue Bell, PA 19422**</u> | : |

**COURT OF COMMON PLEAS**
**PHILADELPHIA COUNTY**
**JUNE TERM, 2020**
**NO.**

# COMPLAINT
## <u>NOTICE TO DEFEND</u>

| NOTICE | AVISO |
|---|---|
| You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you. | Le han demandado a usted en la corte.  Si usted quiere defenderse de estas demandas espuestas en las paginas siguientes, usted tiene veinte (20) disa de plazo el partir de la fecha de la demanda y la notificacion.  Hace falta asentar una comparencia escrita o en persona o con un abogado o entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion.  Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede perer dinero o sus propiedades u otros derechos importantes para usted. |
| *You should take this paper to your lawyer at once.  If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find our where you can get legal help.* | *Lleva esta demanda a un abogado immediatamente.  Si no tiene abogado o si no tiene el dinero suficiente de pagartal servicio.  Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede consequir asistencia legal.* |
| Philadelphia Bar Association<br>Lawyer Referral<br>and Information Service<br>One Reading Center<br>Philadelphia, Pennsylvania 19107<br>(215) 238-6333 | Asociacion de Licenciados<br>de Filadelfia<br>Servicio de Referencia e<br>Informacion Legal<br>One Reading Center<br>Filadelfia, Pennsylvania 19107 |

**BENSLEY LAW OFFICES, LLC**
BY:    William C. Bensley                              **Attorney for Plaintiffs**
Identification No.:  79953
1500 Walnut Street, Suite 900
Philadelphia, PA  19102
(267) 322-4000
Email: wcbensley@bensleylawoffices.com

| | |
|---|---|
| **VISLESH MACHERLA**<br>8030 Needwood Road, Condo 202<br>Derwood, MD  20855<br>v.<br>**NORTH PENN IMPORTS d/b/a**<br>**NORTH PENN MAZDA**<br>181 Bethlehem Pike<br>Colmar, PA  18915<br>and<br>**JOHNATHAN SELL**<br>181 Bethlehem Pike<br>Colmar, PA  18915<br>and<br>**MAZDA NORTH AMERICAN**<br>**OPERATIONS**<br>Attn: Customer Experience Center<br>P.O. Box 19734<br>Irvine, CA  92623-9734<br>and<br>**WELLS FARGO DEALER SERVICES**<br>930 Harvest Drive #200<br>Blue Bell, PA 19422 | **COURT OF COMMON PLEAS**<br>**PHILADELPHIA COUNTY**<br>**JUNE TERM, 2020**<br>NO. |

**COMPLAINT**
**CIVIL ACTION:**
<u>**FRAUD: (4010)**</u>

<u>**PARTIES**</u>

1.      Plaintiffs, Mr. Vislesh Macherla, is an adult individual presently residing at 8030 Needwood Road, Condo 202, Derwood, MD  20855.

2.      Defendant, NORTH PENN IMPORTS d/b/a NORTH PENN MAZDA is a corporation licensed to do business in the Commonwealth of Pennsylvania, regularly conducting business in Philadelphia County and having a principal place of business located at 181 Bethlehem Pike, Colmar, PA 18915; at all times relevant, acting alone or in concert with others, formulated, directed, concealed,

1

controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set-forth in this Complaint.

3.      Defendant, JOHNATHAN SELL, is a supervising agent and/or employee of Defendant NORTH PENN IMPORTS and holds a management position at and/or with said Defendant, and at all times relevant, acting alone or in concert with others, formulated, directed, concealed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set forth in this Complaint.

4.      Defendant, MAZDA NORTH AMERICAN OPERATIONS (MNAO) is a corporation licensed or registered to do business in the Commonwealth of Pennsylvania, regularly conducting business in Philadelphia County and having a principal place of business located at 1444 McGaw Avenue, Irvine, CA  92614; at all times relevant, acting alone or in concert with others, formulated, directed, concealed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set-forth in this Complaint.

5.      Defendant, WELLS FARGO DEALER SERVICES (WFDS) is a corporation licensed to do business in the Commonwealth of Pennsylvania, that regularly does business in Philadelphia County, and that has headquarters located and at P.O. Box 19733, Irvine, CA  92623-9733, and all times relevant, acting alone or in concert with others, formulated, directed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set-forth in this Complaint.

## FACTS AND ALLEGATIONS

6.      At all times relevant hereto, defendants acted by and through their agents, servants, and employees who acted within the scope of their authority and within the course of their employment.

7.      Prior to the execution of any contracts, and at all times relevant, the Defendants' agents, including but not limited to Defendant NORTH PENN IMPORTS's agents, including SELL and/or those

Case ID: 200601413

identified on the attached documents, made the following representations expressly and/or impliedly about the subject vehicle:

      a)     the subject vehicle had 17,796 miles on it at the time ownership was transferred to Plaintiff;

      b)     the odometer reading and disclosure statement reflected the actual mileage;

      c)     the odometer reading and disclosure statement was reliable and accurate;

      d)     the subject vehicle was in good, safe and operable condition;

      e)     the subject vehicle was carefully inspected and free of defects;

      g)     Plaintiff was being charged lawfully amounts paid to public officials for fees;

      i)     Defendants were charging a lawful documentary fee;

      j)     Defendants would transfer lawfully Title and registration;

      k)     the sale was conducted and the paperwork was completed lawfully;

      l)     the Defendants charged lawfully for a Service Contract;

      m)     Defendants were charging lawfully for all charges and fees;

      n)     the subject vehicle was carefully inspected;

      o)     the subject vehicle was MAZDA Certified in accordance with high standards;

      p)     the subject vehicle was never in any accidents or damaged;

      q)     the financing terms offered were the best available;

      r)     the vehicle was in perfect condition;

      s)     the vehicle was very well maintained by the prior owner.

8.     Prior to the execution of any agreements, and at all times relevant, the Defendants' agents, including SELL and/or those identified on the attached sales document, concealed the following facts from the Plaintiff about subject vehicle:

      a)     the Defendants were charging improperly for and/or overcharging for fees;

Case ID: 200601413

b)      the Defendants did not conduct the sale and/or financing or complete the paperwork lawfully;

c)      the vehicle was not sold in good, operable or defect free condition;

d)      the vehicle was not carefully inspected;

e)      the vehicle was not MAZDA Certified or was not certified in accordance with high standards;

f)      Defendants did NOT transfer Title lawfully;

g)      the subject vehicle was in a severe accident and was severely damaged;

h)      the vehicle was not in perfect condition.

9.      By a Buyer's Order (BO) dated January 18, 2016, the Plaintiff and Defendants ostensibly and apparently agreed to the terms for the purchase purchase/sale of a 2015 Mazda Mazda6 (VIN: JM1GJ1V50F1182856) (Exhibits 1 and 2).

10.     Defendants represented that the vehicle was MAZDA Certified (Exhibit 3).

11.     Defendants provided plaintiff with a MAZDA CERTIFIED INSPECTION CHECKLIST that indicated that the vehicle had not been in any accidents or damaged (Exhibit 3).

12.     Defendants provided plaintiff with a Carfax and an Autocheck report that misrepresented that the vehicle had not been in any accidents or damaged (Exhibits 4-5).

13.     The Carfax report and MAZDA CERTIFIED INSPECTION CHECKLIST are part of the contract, and/or were omitted fraudulently and/or by clerical error.

14.     The vehicle suffered malfunctions from the time of purchase, including remote start[01/21/2016; resolved no charge], alignment [North Penn Mazda, 02/03/2016, no charge], unsecure front license plate and loose front bumper [North Penn Mazda, 04/15/2016, repaired no charge], fog light [Ourisman of Rockville, 06/23/2016, no charge]; loose molding and fog lamp [Ourisman of Rockville,

Case ID: 200601413

08/27/2016, no charge for molding, $29.80 charge for fog lamp], front headlamp [Ourisman of Rockville, 10/14/2016, no charge], molding [Ourisman of Rockville, 01/05/2017, no charge] (Exhibit 6).

15.     Defendant NORTH PENN MAZDA reimbursed plaintiff for the $29.80 fog lamp repair (Exhibit 6).

16.     During all of the aforementioned problems and service, neither defendants nor the other service shops indicated that the problems were anything other than normal wear and tear, and they never indicated that the problems were related to any pre-sale accident or damage, and never advised plaintiff of any pre-sale accidents or damage or any indications of any pre-sale accident or damage.

17.     There was nothing about the aforementioned problems and service that would have reasonably alerted a layperson such as plaintiff to the possibility of any pre-sale accidents or damage.

18.     Plaintiff did not discover the subject pre-sale accident and damage until he notice paint peeling in October 2019 (Exhibit 6).

19.     Plaintiff contacted defendant NORTH PENN MAZDA and defendant NORTH PENN MAZDA indicated that the only possibility is that there was a manufacturing defect.

20.     Plaintiff brough the vehicle to a body shop in December 2019 and was advised for the first time that the vehicle was involved a pre-sale accident and severely damaged.

21.     There has only been one post-sale damage event, which was minor, and which only resulted in damage to the passenger sideview mirror.

22.     The vehicle had more than three panels refinished before it was sold to plaintiff (Exhibit 6).

23.     Both the driver-side doors were damaged and repaired and refinished pre-sale.

24.     Both the driver-side doors are peeling.

25.     The trunk and deck lid (trunk lid) were damaged and repaired pre-sale.

5

Case ID: 200601413

26.     The left and right rear quarter-panels, which are part of the frame/structure, were damaged and repaired pre-sale.

27.     The aforementioned pre-sale repairs were incomplete and/or improper.

28.     The vehicle exhibits and exhibits numerous classic, tell-tale signs of damage, improper and incomplete repairs, and still existing damage, including paint defects, peeling/delamination, missing clear-coat, blend lines, non-factory seam sealer, non-factory aftermarket replacement parts, exposed and corroded non-factory welds, color mismatch, and panel gap misalignment, which would have been evident to anyone with experience in the automotive industry.

29.     Anyone experienced in the industry performing an industry standard appraisal or inspection could not have missed the tell-tale signs that the subject vehicle was in an accident, was improperly and/or improperly repaired and was sold in a damaged, defective, unfit and unmerchantable condition.

30.     Defendant NORTH PENN IMPORTS continued and continues to deny any accidents, damage or paint defects.

31.     Defendant NORTH PENN IMPORTS continued and continues to deny that any alleged accidents, damage or paint defects violate the MAZDA CPO program.

32.     In accordance with the law, defendant NORTH PENN IMPORTS was to simultaneously transfer Title ownership to the plaintiff.

33.     In violation of the law, defendant NORTH PENN IMPORTS did not transfer Title ownership until two weeks after the subject sale.

34.     As a result of the late Title ownership transfer, all of the financing disclosures, which were keyed to the date of sale, were rendered false and fraudulent.

Case ID: 200601413

35.     If the vehicle had, and if Plaintiff had known that the vehicle had required or undergone significant repairs, would require significant repairs, had been in a prior accident, had been damaged, and/or had a damaged structure/frame, or if the Plaintiff had known that the odometer disclosure statement was false, fraudulent, unreliable or unlawful, that any charges or fees were unlawful, false or inaccurate, that any paperwork was completed unlawfully, that the defendants had lied to them in any way, or the true total cost of the purchase, or that the Defendants would not honor their agreements, then plaintiff would have not purchased the vehicle.

36.     Defendants NORTH PENN IMPORTS represented it was signing the Title Certificate of the car over to Plaintiff by representing that it would process the Title with the Department of Motor Vehicles, by acting as an agent of the Department of Motor Vehicles to provide their with a temporary tag and a temporary registration, and by using various contract documents that asserted that they was the owner of the car and was giving up a security interest in the car.

37.     The above and below described misrepresentations and omission of required disclosures are part of the contract, and/or they were a material part of the transaction, which were fraudulently omitted from the contract.

## **ADDITIONAL ALLEGATIONS**

38.     Defendants never expressed in any manner any allegation that Plaintiff supplied any false or unverifiable information in connection with the transaction.

39.     Defendants never expressed in any manner any allegation that any of Defendants actions were as set forth herein were taken as a result of any false or unverifiable information supplied by the Plaintiff.

40.     Defendants never expressed in any manner any allegation that Plaintiff was to blame for any of Defendants' actions.

Case ID: 200601413

41.    The Plaintiff has no experience in or specialized knowledge related to the automotive industry, and/or related to motor vehicles, motor vehicle sales, motor vehicle repair, and/or consumer finance.

42.    At all times relevant, Defendants promised to take good care of the Plaintiff.

43.    Defendants stood in a position of trust and confidence.

44.    Plaintiff surrendered substantial control over the financing of the subject purchase.

45.    By virtue of their position of trust and confidence, their unequal sophistication and expertise, Defendants had the means to take advantage and exercise undue influence over Plaintiff.

46.    The purchase of a motor vehicle is one of the largest investments that many, if not most, consumers make.

47.    The subject purchase was the Plaintiff's first or second greatest investment.

48.    The Defendants stood in a fiduciary relationship with the Plaintiff.

49.    The Defendants exploited their fiduciary relationship by deceiving the Plaintiff regarding the party's respective rights and duties under the BO, and concealing the nature of Defendant's conduct (misconduct).

50.    The established business practices discussed in the preceding paragraphs caused Plaintiff to misunderstand how Defendants were treating the Credit Contract, caused a delay in receiving Title ownership, caused Plaintiff to suffer, by his dealings with Defendants, annoyance, embarrassment, fear, and other general distress damages, and caused Plaintiff to be denied the benefits of the consumer protection statutes specifically designed to protect him.

51.    The Defendant NORTH PENN IMPORTS is in the business and regularly extends credit to consumers in the manner described above.

52.     Defendant NORTH PENN IMPORTS is a licensed installment seller in the Commonwealth of Pennsylvania.

53.     Defendant NORTH PENN IMPORTS is a licensed motor vehicle dealer in Pennsylvania.

54.     Defendant SELL is or must be a licensed professional motor vehicle sales person in Pennsylvania.

55.     Defendant WFDS is and/or is required to be a licensed finance companies in the Commonwealth of Pennsylvania.

56.     The subject vehicle was purchased by the Plaintiff primarily for personal use.

57.     The Defendants induced and entered into the subject purchase-sale agreements with a then present and conscious intention to breach, reject, and/or refuse to honor their obligations under said agreement.

58.     The established business practices discussed in the preceding paragraphs were created, implemented, approved, and/or supervised by the Defendants.

59.     As a result of the Defendants' unlawful actions, the Plaintiff has been deprived of the use and enjoyment of the vehicle, has incurred expenses for replacement transportation, has suffered inflated consumption and/or damage to his credit rating and/or credit reputation, and has suffered extreme emotional distress, frustration, inconvenience, humiliation, and/or embarrassment.

60.     Plaintiff has been and will continue to be financially damaged due to Defendants' intentional, reckless, wanton, and/or negligent misrepresentations, regulatory and statutory violations, and/or failure to honor their contractual obligations, including damage to his credit rating and reputation.

61.     During all times relevant the Defendants deceived the Plaintiff into believing Defendants' actions were lawful, and/or concealed their actions' unlawful nature.

Case ID: 200601413

62.     At all times relevant, the Plaintiff relied on Defendants' apparent and claimed experience, sophistication and expertise in inspecting, repairing, selling and/or financing motor vehicles.

## CERTIFICATION

63.     During all times relevant, defendant NORTH PENN IMPORTS acted as defendant MNAO's agent in the advertisement, promotion and sale of MAZDA CERTIFIED vehicles and the advertisement and sale of the subject vehicle as MAZDA CERTIFIED.

64.     During all times relevant, defendants NORTH PENN IMPORTS and MNAO promote their Certified Preowned Program as a way to induce consumers to buy vehicles and/or to do so at an increased price.

65.     During all times relevant, defendants NORTH PENN IMPORTS and MNAO promoted their Certified Preowned Program as a way to reduce consumer perception of the risk involved with purchasing a pre-owned vehicle, eliminates the possibility of any hidden past problems, has a flawless history, and is a used vehicle consumers can trust.Defendants NORTH PENN IMPORTS and MNAO heavily promote the MAZDA CPO program as encompassing a "comprehensive," "uncompromising," "rigorous" and "detailed" "150+ point inspection," "inside and out," by "factory trained MAZDA technicians" that it will provide "confidence" and "peace of mind."

66.     Defendants NORTH PENN IMPORTS and MNAO heavily promote the MAZDA CPO program vehicles as being "scrutinized" and "tested."

67.     Defendants NORTH PENN IMPORTS and MNAO heavily promote the MAZDA CPO program vehicles having every "major and minor component" "scrutinized."

68.     Defendants NORTH PENN IMPORTS and MNAO heavily promote the MAZDA CPO program vehicles as being in like-new condition.

69.     Defendants NORTH PENN IMPORTS and MNAO heavily promote the MAZDA CPO program vehicles only including vehicle inspected and assured to meet the "highest," "incredibly high" and/or "extreme" standards.

Case ID: 200601413

70.     Defendants NORTH PENN IMPORTS and MNAO promise that the CPO process is "a process we take seriously, and we set our standards high."

71.     Defendants NORTH PENN IMPORTS and MNAO heavily promote the MAZDA CPO program vehicles inspection "means that everything under the hood – and above the hood – is analyzed by factory-trained technicians."

72.     Defendants NORTH PENN IMPORTS and MNAO heavily promote the MAZDA CPO program inspection as the means by which they "ensure every vehicle will look and perform like a new Mazda."

73.     Defendants NORTH PENN IMPORTS and MNAO heavily promote the MAZDA CPO program vehicles as having been carefully inspected and excluded any improper exterior repairs.

74.     Defendants NORTH PENN IMPORTS and MNAO heavily promote the MAZDA CPO program vehicles having gone through as necessary "a thorough reconditioning using Mazda Genuine Parts until it's worthy of sporting Mazda's CPO stamp of approval."

75.     Upon information and belief, MNAO does not impose any and/or sufficient supervision and/or accountability related to its MAZDA CPO program.

76.     Without careful supervision and accountability, any claimed standards are illusory and fraudulent.

77.     Consumers are misled to believe that MAZDA stands behind its CPO program and vehicles.

78.     Upon information and belief, vehicles with three or more panels refinished are considered to have sustained substantial body damage and may not be certified.
 (Exhibits 7-8).


**MAZDA NORTH AMERICAN OPERATIONS**

79.     MNAO developed, implemented, administers, and supervises the MAZDA CPO program.

Case ID: 200601413

80.     MNAO developed a manual by which the CPO is to be implemented and administered, and, in particular, by what standards the qualification inspections are required to be performed.

81.     MNAO requires participating dealers to sign a MAZDA CPO dealer agreement.

82.     MNAO acknowledges that consumers rely upon the proper certification of the vehicles.

83.     The aforementioned manual and/or MAZDA CPO program includes rules and standards dictating how the dealers must promote the MAZDA CPO program.

84.     The aforementioned manual and/or MAZDA CPO program includes rules that require that dealers promote the MAZDA CPO program as referenced above, including as having high standards, providing high value, guaranteeing safety, involving strict standards, providing "peace of mind," and requiring careful inspections.

85.     The aforementioned manual and/or MAZDA CPO program includes rules and standards according to which a vehicle must be certified.

86.     The aforementioned manual and/or MAZDA CPO program excludes any vehicle that has sustained any frame/unibody damage.

87.     The aforementioned manual and/or MAZDA CPO program excludes any vehicle that has been used at any time as a commercial vehicle.

88.     The aforementioned manual and/or MAZDA CPO program includes rules that dealers disclose to consumers if a certified vehicle has been involved in an accident or has incurred damage.

89.     The aforementioned manual and/or MAZDA CPO program requires that dealers provide consumers with a written disclosure of the inspection results.

90.     The aforementioned manual and/or MAZDA CPO program requires that dealers provide a copy of the MAZDA Pre-Owned Vehicle Inspection Checklist to the customer.

91.     The aforementioned manual and/or MAZDA CPO program requires that dealers provide consumers with a written disclosure of all of the damage and repairs to the vehicle.

92.     The aforementioned checklist must indicate all repairs/reconditioning that a vehicle required and/or was performed.

Case ID: 200601413

93.     The aforementioned manual and/or MAZDA CPO program requires that the customer be provided with a Certificate of Inspection that the vehicle has been inspected and passed certified inspection.

94.     The aforementioned manual and/or MAZDA CPO program prohibits vehicles with frame or structural damage from being entered in to the program.

95.     MNAO's CPO program is a scam used to increased vehicle sale prices and to obtain unearned profits.

96.     MAZDA does not meaningfully supervise its CPO program, including but limited to meaningfully auditing participating dealers.

97.     MNAO's CPO program does not include meaningful accountability so there are no meaningful standards.

98.     Upon information and belief, MNAO has not meaningfully disciplined any participating dealers, including terminating said dealers, for violating the CPO program, including selling non-qualifying vehicles, defective vehicles, dangerous vehicles, frame damaged vehicles, and/or selling vehicles in violation of federal, state and/or local laws.

99.     Because there is no meaningful oversight, no meaningful accountability and thus no meaningful standards, the defendants' promotion of the CPO program is entirely fraudulent, misleading and/or deceptive.

100.    Defendant MAZDA's CPO program was an essential element of the subject fraudulent transaction and played a substantial contributing role in its perpetration.

101.    In promoting the MAZDA CPO program and selling the subject vehicle as MAZDA Certified, defendants MNAO and NORTH PENN IMPORTS acted pursuant to a common design.

102.    In promoting the MAZDA CPO program and selling the subject vehicle as MAZDA Certified defendants MAZDA and NORTH PENN IMPORTS knew that they were breaching their duty of good faith and fair dealing to consumers in general and plaintiff in particular, and lent each

Case ID: 200601413

other substantial assistance in the fraudulent and other misconduct described more fully above and below (Exhibits 7-8).

## WFDS BANK

103.    Pursuant to the express terms of the RISC, State common law of assignments, and Statutory law, WFDS "stepped into the same shoes" as the Dealer Defendants and became derivatively, jointly, severally and fully liable for all of the Dealer Defendants' misconduct.

104.    Plaintiff advised defendant WFDS of the dealer's misconduct as alleged herein and defendant refused to acknowledge its potential derivative liability.

105.    Defendant WFDS denied that the dealer's misconduct could in any way affect the parties' respective rights and duties under the RISC.

## COUNT I
## FRAUD
## PLAINTIFF v. ALL DEFENDANTS

106.    Plaintiff incorporates by reference all facts and allegations set forth in this Complaint.

107.    As the assignee of the subject RISC, defendant is derivatively and fully liable for the seller's misconduct.

108.    Prior to the execution of any contracts, and at all times relevant, the Defendants' agents, including but not limited to Defendants, and/or those identified on the attached documents, made the following representations expressly and/or impliedly about the subject vehicle:

      a)      the subject vehicle was in good, safe and/or operable condition;

      b)      the subject vehicle was carefully inspected and free of defects;

      c)      Plaintiff was being charged lawfully amounts paid to public officials for fees;

      d)      Defendants were charging a lawful documentary fee;

      e)      Defendants would transfer lawfully Title and registration;

      f)      the sale was conducted and the paperwork was completed lawfully;

Case ID: 200601413

g)      Defendants were charging lawfully for all charges and fees;

h)      the subject vehicle was carefully inspected;

i)      the subject vehicle was MAZDA Certified in accordance with high standards;

k)      the subject vehicle was never in any accidents or damaged;

l)      the vehicle was in perfect condition;

m)      the financing terms were the best available;

n)      the vehicle was well-maintained by the prior owner.

109.    Prior to the execution of any agreements, and at all times relevant, the Defendants' agents, including those identified on the attached sales document, concealed the following facts from the Plaintiff about subject vehicle:

a)      the Defendants were charging improperly for and/or overcharging for fees;

b)      the Defendants did not conduct the sale and/or financing or complete the paperwork lawfully;

c)      the vehicle was not sold in good, operable or defect free condition;

d)      the vehicle was not carefully inspected;

e)      the vehicle was not MAZDA Certified or was not certified in accordance with high standards;

f)      Defendants did NOT transfer Title lawfully;

g)      the vehicle was in a severe accident and was severely damaged;

h)      the vehicle was not in perfect condition or well-maintained.

110.    The misrepresentations and omissions identified in the immediately preceding paragraphs, were known or should have been known to Defendants to be false when made, were material in nature, and were made with the intent to deceive, defraud and/or induce the Plaintiff, and in fact, induced him to purchase the automobile at the price listed in the purchase agreement.

Case ID: 200601413

111.   The Defendants knew that the Plaintiff had no special knowledge in the purchase, financing and condition of automobiles and would rely on their representations.

112.   The Plaintiff relied on the Defendants' misrepresentations and was induced to sign the BO and other documents related to which they apparently and ostensibly purchased and financed the aforementioned automobile at the inflated amount listed in the purchase agreement.

113.   As a result of the aforementioned conduct, the Plaintiff suffered the damages outlined above and below.

114.   The Defendants' actions as hereinbefore described were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary, treble and/or punitive damages.

115.   The defendants' actions as herein described caused plaintiff harm that was indivisible and thus subjects the defendants to joint and several liability.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly and severally in an amount greater than Fifty Thousand Dollars ($50,000), together with attorneys' fees, interest, other costs and punitive damages and such other relief, including equitable relief, including rescission/revocation/cancellation, as the court deems appropriate.

## COUNT II
### BREACH OF CONTRACT
### PLAINTIFF v. ALL DEFENDANTS

116.   Plaintiff incorporates by reference all facts and allegations set forth in this Complaint.

117.   As the assignee of the subject RISC, defendant is derivatively and fully liable for the seller's misconduct.

118.   This and all subsequent causes of action are pleaded in the alternative and/or in addition to Plaintiff's cause of action for fraud.

Case ID: 200601413

119.    In the alternative, plaintiff apparently and/or ostensibly was misled to believe that they had contracted with Defendants for the purchase of the vehicle as well as taxes, registration, tags, service contract, and transfer of title, which agreement was final and included all payment and financing terms.

120.    Plaintiff performed or satisfied all of his obligations under the aforementioned finance purchase agreement.

121.    The Plaintiff was at no time relevant in default.

122.    The Defendants never claimed in writing or otherwise at any time that the Plaintiff was in default.

123.    The defendants breached the contract by failing to deliver the vehicle as promised.

124.    The Defendants breached and/or anticipatorily breached all of the agreements thereby relieving Plaintiff of any duty to perform thereunder.

125.    As a result of Defendants' breach, the Plaintiff suffered the damages outlined above and in the following additional ways:

      a.    increased purchase costs;

      b.    inflated consumption of and/or damaged credit rating and reputation;

      c.    deprived of the use and enjoyment of the vehicle;

      d.    incurred cost of replacement transportation;

      e.    spent time resolving problems created by Defendants' breach;

      f.    incurred other incidental and consequential damages, including emotional distress;

      g.    incurred increased interest and other expenses for financing the purchase of the vehicle.

126.    The Defendants' actions as hereinbefore described were reckless, outrageous, willful, and wanton.

Case ID: 200601413

127.    The defendants' actions as herein described caused plaintiff harm that was indivisible and thus subjects the defendants to joint and several liability.

WHEREFORE, Plaintiff demands judgment against Defendants jointly and severally in an amount greater than Fifty Thousand Dollars ($50,000), together with incidental and consequential damages, interest and other costs, and such other relief, including equitable relief, including rescission/revocation/cancellation, as the court deems appropriate.

### COUNT III
### NEGLIGENCE
### PLAINTIFF v. ALL DEFENDANTS

128.    Plaintiff incorporates by reference all facts and allegations set forth in this Complaint.

129.    As the assignee of the subject RISC, defendant is derivatively and fully liable for the seller's misconduct.

130.    The Defendants were negligent in the following respects:

a.    failing to institute appropriate policies and procedures to comply with the applicable laws related to the advertising and sale of vehicles;

b.    failing to institute policies, train personnel, and supervise personnel regarding lawful advertising, financing and/or sales presentations;

c.    failing to institute policies, train personnel, and supervise personnel regarding proper pre-sale inspections of vehicles;

d.    failing to institute policies, train personnel, and supervise personnel regarding Title transfers;

e.    failing to institute policies, train personnel, and supervise personnel regarding financing agreements;

f.    failing to institute policies, train personnel, and supervise personnel regarding sales of and performance obligations related to service contracts.

g.    failing to hire competent and/or honest personnel, such as mechanics and salespeople;

h.    failing to properly train and/or supervise its personnel;

18

    i.      failing to honor BOs and their other promises and representations described more fully above and below.

    j.      failing to properly inspect the vehicle, detect defects therein, and/or report said defects to the Plaintiff;

    k.      violating 13 Pa.C.S.A. § 101 et seq., 75 Pa. C.S.A. § 7131 *et seq.*, 69 P.S. § 601 *et seq.* now 12 Pa.C.S.A. 6001 *et seq.*, 37 PaC. § 301 et seq.

131.    Plaintiff suffered actual damages proximately caused by Defendants' negligence as alleged above.

132.    The Defendants' actions as hereinbefore described were reckless, outrageous, willful, and wanton.

133.    The defendants' actions as herein described caused plaintiff harm that was indivisible and thus subjects the defendants to joint and several liability.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly and severally in an amount greater than Fifty Thousand Dollars ($50,000), together incidental and consequential damages, interest and costs, and such other relief, including equitable relief, including rescission/revocation/cancellation, as the court deems appropriate.

## COUNT IV
## NEGLIGENT MISREPRESENTATION
## PLAINTIFF v. ALL DEFENDANTS

134.    Plaintiff incorporates by reference all facts and allegations set forth in this Complaint.

135.    As the assignee of the subject RISC, defendant is derivatively and fully liable for the seller's misconduct.

136.    The conduct of the Defendants as alleged in addition to and in the alternative constituted separate negligent misrepresentations and omissions that were false because of the failure to exercise reasonable care or competence in obtaining or communicating the information, including but not limited to misrepresentations of the history and condition of the vehicle and the terms of sale and financing, and

Case ID: 200601413

as a result Plaintiff was induced to purchase the vehicle and/or taking or refraining from taking action with respect to the vehicle, such as returning the vehicle or rescinding the purchase contract and/or filing suit.

137.    As a direct and proximate result of these negligent misrepresentations, the Plaintiff suffered damages as alleged.

138.    The defendants' actions as herein described caused plaintiff harm that was indivisible and thus subjects the defendants to joint and several liability.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly and severally in excess of Fifty Thousand Dollars ($50,000), together with incidental and consequential damages, interest, costs, and punitive damages, and such other relief, including equitable relief, including rescission/revocation/cancellation, as the court deems appropriate.

## COUNT V
## BREACHES OF EXPRESS AND IMPLIED WARRANTIES
## PLAINTIFF v. ALL DEFENDANTS

139.    Plaintiff incorporates by reference all facts and allegations set forth in this Complaint.

140.    As the assignee of the subject RISC, defendant is derivatively and fully liable for the seller's misconduct.

141.    The representations of the Defendants regarding the condition of the subject vehicle and the terms of sale constituted express warranties and implied warranties of the laws in the Commonwealth of Pennsylvania.

142.    The vehicle was not merchantable, in breach of the implied warranty of merchantability, and it was not fit for the ordinary purposes for which such goods are sold.

143.    Plaintiff suffered actual damages proximately caused by these breaches of warranties as alleged above.

Case ID: 200601413

WHEREFORE, Plaintiff demands judgment against the Defendants in excess of Fifty Thousand Dollars ($50,000), together with costs and interest, incidental and consequential damages, and such other relief, including equitable relief, including rescission/revocation/cancellation, as the Court may deem appropriate.

## COUNT VI
## VIOLATION OF THE PROFESSIONS AND OCCUPATIONS ACT
## 63 P.S. § 818.19
## PLAINTIFF v. ALL DEFENDANTS

144.    Plaintiff incorporates all facts and allegations set forth in this Complaint.

145.    Defendant NORTH PENN IMPORTS are licensed under the PAOA.

146.    Defendant NORTH PENN IMPORTS has a MAZDA franchise and/or is a MAZDA franchisee and sells new motor vehicles.

147.    The misconduct more particularly identified above and below constitute violations of 63 P.S. § 818.19(2), (3), (5), (6), (7), (21), (23), (24), and (26).

148.    As a result of the Defendants' misconduct, the Plaintiff was deprived of the use and/or enjoyment of the subject vehicle, the use and enjoyment of their down payment, will incur costs and expenses for replacement transportation, incurred inconveniences and frustration, together with the other damages set forth above and below.

149.    The defendants' individual and collective acts and/or omissions were substantial contributing factors and causes of violations of the duties as set forth in this Count and to plaintiff's indivisible harm and damages more fully described above and below, and render the defendants joint and severally liable to the plaintiff.

150.    The Board of Vehicles Act – also known as the Profession and Occupation Act – provides for a private right of action and civil remedies.  63 P.S. § 818.29.

**§ 818.29.  Civil actions for violations**

Case ID: 200601413

Notwithstanding the terms, provisions or conditions of any agreement or franchise or other terms or provisions of any novation, waiver or other written instrument, any person who is or may be injured by a violation of a provision of this act of any party to a franchise who is so injured in their business or property by a violation of a provision of this act relating to that franchise, or any person so injured because they refuses to accede to a proposal for an arrangement which, if consummated, would be in violation of this act, may bring an action for damages and equitable relief, including injunctive relief, in any court of competent jurisdiction.

63 P.S. § 818.29.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly and/or severally in excess of Fifty Thousand Dollars ($50,000), together with incidental and consequential damages, interest, costs, and such other and/or equitable relief, including rescission/revocation/cancellation, as the Court may find appropriate.

**COUNT VII**
**CIVIL CONSPIRACY**
**PLAINTIFF v. ALL DEFENDANTS**

151.    Plaintiff incorporates by reference all facts and allegations set forth in this Complaint.

152.    As the assignee of the subject RISC, defendant is derivatively and fully liable for the seller's misconduct.

153.    The Defendants jointly and/or severally, substantially contributed, substantially assisted and acted in concert with each other in the misconduct described above and below to their mutual economic benefit, including, in particular, in the development, administration, supervision, promotion and misrepresentation of the false and fraudulent MAZDA CPO program.

154.    The defendants jointly and severally conspired with each other, substantially contributed, substantially assisted and acted in concert with each other by concealing each other's misconduct, by failing or refusing to request or demand that each other terminate their misconduct, by failing or refusing to terminate their agreements with each other, by failing or refusing to report each

Case ID: 200601413

other to the appropriate authorities, by failing or refusing to advise consumers that each other's conduct was unlawful, by refusing Plaintiffs' demand for and depriving Plaintiffs of full and complete account information, by refusing to acknowledge the misconduct and demanding that the dealer buy-back the RISC and agreeing not to try to collect any more money from Plaintiffs, and by refusing to return Plaintiffs' money.

155.    The defendants had knowledge of their respective overt acts, omissions, evasions, and concealments, which have contributed to plaintiffs' damages and losses.

WHEREFORE, Plaintiff demands judgment against the Defendants in excess of Fifty Thousand Dollars ($50,000), together with all damages, together with interest, costs, and exemplary damages and such equitable relief, including rescission/revocation/cancellation, as the Court may find appropriate.

### COUNT VIII
### VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES
### PLAINTIFF v. ALL DEFENDANTS

156.    Plaintiff incorporates by reference all facts and allegations set forth in this Complaint.

157.    As the assignee of the subject RISC, defendant is derivatively and fully liable for the seller's misconduct.

158.    The actions and omissions of Defendants as hereinbefore and hereinafter described constitute violations of the Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 Pa.C.S.A. § 201-1 *et. seq.*, which are in-and-of-themselves fraudulent, deceptive and misleading, constituting violations of the Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S.A. § 201-1 *et. seq.*

159.    The actions and omissions of Defendants has hereinbefore and hereinafter described constitute violations of the following sections of the UTPCPL 73 P.S. § 201-2(4):

(ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

23

Case ID: 200601413

(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that they does not have;

(vi) Representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used or secondhand;

(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

(ix) Advertising goods or services with intent not to sell them as advertised;

(xi) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

**Pennsylvania Automotive Industry Trade Practices**

160.    The defendants actions, including misrepresenting the vehicle's history, condition and value, misrepresenting the seller and the terms and conditions of the sale and financing, as set forth in more detail above and below, and/or the respective sales documents, violated the following provisions of the Pennsylvania Automotive Industry Trade Practices:

§ 301.2. Advertising and sales presentation requirements
(1) The use of different type, size, style, location, sound, lighting or color, so as to obscure or make misleading a material fact in an advertisement or sales presentation.
(2) The misrepresentation in any way of the size, inventory or nature of the business of the advertiser or seller; the expertise of the advertiser or seller or their agents or employes; or the ability or capacity of the advertiser or seller to offer price reductions.
(3) The use of an advertisement or sales presentation as part of a plan or scheme not to sell the vehicles or services advertised, or both, or not to sell the vehicles or services advertised or presented at the advertised price. The following will be *prima facie* evidence of a plan or scheme not to sell the motor vehicles or services or not to sell the vehicles or services at the advertised or represented prices:
    (i) Refusing to show, display, sell or otherwise provide the goods and services advertised in under the terms of the advertisement.
    (ii) Disparaging by act or word the advertised goods and services; the warranty; the credit terms; the availability of service, repairs or parts; or anything which in any other respect is a material fact connected with the sale of the advertised goods and services.
    (iii) Refusing to take orders for advertised goods and services or taking orders at a price greater than the advertised price.
    (iv) Showing, demonstrating or delivering advertised goods or services which are

24

Case ID: 200601413

obviously defective, unusable or unsuitable for the purpose represented or implied in the advertisement or sales presentation.

(4) The failure or refusal to sell a motor vehicle or other goods or services under terms or conditions, including price or warranty, which a motor vehicle manufacturer or dealer or repair shop has advertised or otherwise represented.

(5) The representation in an advertisement or sales presentation that a motor vehicle or motor vehicle goods or services are of a particular style, model, standard, quality or grade if they are of another or if the representation conflicts with a written notice or disclosure required under this chapter.

(6) The making of a representation or statement of a fact in an advertisement or sales presentation if the advertiser or salesperson knows or should know that the representation or statement is false and misleading or if the advertiser or salesperson does not have sufficient information upon which a reasonable belief in the truth of the representation could be based.

§ 301.4. General provisions -- motor vehicle dealer

(a) With regard to a motor vehicle dealer, the following will be considered unfair methods of competition and unfair or deceptive acts or practices:

> (2) Using a printed or written contract form agreement, receipt or invoice in connection with the sale of a motor vehicle which is not clearly identified and which does not contain the following:
>
>> (i) The name and address of the dealer and purchaser.
>>
>> (iii) A description of the purchased vehicle as either "new" or "used" and, if used, a brief description of its prior usage such as "executive," "demonstrator," "reconstructed," or any prior usage which is required to be noted on a Pennsylvania Certificate of Title or which appears on the title of any state through which the dealer has acquired ownership.
>>
>> (iv) The total contract price, including an itemized list of charges for repairs, services, dealer-installed optional accessories and documentary preparation which are not included in the purchase price.
>
> (4) Using in a motor vehicle purchase contract a liquidated damage clause or similar clause which requires the forfeiture of a purchaser's deposit or security when the purchaser cancels or breaches the contract unless: the clause contains a specific dollar amount or item to be retained by the dealer; the clause is clear and conspicuous; the purchaser assents to the clause by initialing the same; and the clause is not otherwise unlawful.
>
> (6) Failing to refund the full amount of a purchaser deposit promptly when:
>
>> (iv) The dealer fails to deliver to the purchaser a motor vehicle which conforms to the terms of the contract.
>
> (9) Where no express warranty is given, attempting to exclude the implied warranties of merchantability and fitness for a particular purpose in the sale of a motor vehicle purchased primarily for personal, family or household purposes unless the following notice in at least 20-point bold type is prominently affixed to a window in the motor vehicle so as to be easily read from the outside and is brought to the attention of the prospective purchaser by the seller:

This vehicle is sold *without* any *warranty.* The purchaser will bear the *entire expense* of repairing or correcting any defects that presently exist and/or may occur in the motor vehicle unless the salesperson promises *in writing* to correct such defect or promises in *writing* that certain defects do not exist.

Case ID: 200601413

This paragraph prohibits the use of the term "AS IS" unless the sales contract, receipt, agreement or memorandum contains the following information in a clear, concise and conspicuous manner on the face of the document; the notice shall be in addition to the window statement required by this paragraph and may not contradict an oral or written statement, claim or representation made directly or by implication with regard to the quality, performance, reliability or lack of mechanical defects of a motor vehicle which is offered for sale:
AS IS
*THIS MOTOR VEHICLE IS SOLD AS IS WITHOUT ANY WARRANTY EITHER EXPRESSED OR IMPLIED. THE PURCHASER WILL BEAR THE ENTIRE EXPENSE OF REPAIRING OR CORRECTING ANY DEFECTS THAT PRESENTLY EXIST OR THAT MAY OCCUR IN THE VEHICLE.*
(10) Failing to forward to the proper Commonwealth agency amounts and forms tendered by a purchaser, such as sales tax and transfer and registration fees, within the time prescribed by law.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly and severally in excess of Fifty Thousand Dollars ($50,000), together with attorney's fees, interest, costs, and treble damages and such other relief, including equitable relief, including rescission/revocation/cancellation, as the court deems appropriate.

**BENSLEY LAW OFFICES, LLC**

BY:   /s/William C. Bensley
      **WILLIAM C. BENSLEY**
      **Attorney for Plaintiffs**

Case ID: 200601413

VERIFICATION

I hereby verify that the statements made in the foregoing document are true and correct to the best of my knowledge, information and belief.

This verification is made subject to the penalties set forth in 18 Pa. C.S. Sec. 4904 relating to unsworn falsification to authorities.

_____

DATE: 6/18/2020